1

2

3

4

5

6

7

8

9                          UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA- EASTERN DIVISION

11

12

13

14

15    ANGELA BERNAL,                    )       NO. ED CV 07-1328-(SH)
                                        )
16              Plaintiff              )            MEMORANDUM DECISION
      v.                               )
17                                     )
      MICHAEL J. ASTRUE,               )
18    Commissioner of Social Security  )
      Administration,                  )
19                                     )
                Defendant.             )
20    _____ )

21

22         This matter is before the Court for review of the decision by the

23   Commissioner of Social Security denying plaintiff's application for Title II Social

24   Security Disability Insurance benefits and Title XVI Supplemental Security

25   Income benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the

26   case may be handled by the undersigned. The action arises under 42 U.S.C.

27   §405(g), which authorizes the Court to enter judgment upon the pleadings and

28                                        1

transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings, the defendant has filed the certified transcript of record, and the parties have filed a joint stipulation. After reviewing the matter, the Court concludes that the decision of the Commissioner should be affirmed.

On March 11, 2002, plaintiff Angela Bernal filed an application for Title II Social Security Disability Insurance benefits, and Title XVI Supplemental Security Income benefits alleging an inability to work since January 19, 2001. On August 28, 2003 an Administrative Law Judge (ALJ) denied benefits, ruling that Plaintiff was able to perform her prior work. (Administrative Record ["AR"] 29-38.) The Appeals Council granted review, and vacated and remanded the case on October 13, 2003, indicating that the ALJ should further develop the record and conduct a supplemental hearing. (AR 60.) On November 6, 2003 and October 29, 2003, plaintiff filed new applications for Title II and Title XVI benefits respectively. (AR 61-63; 412-414.) These claims were consolidated with those filed earlier. [AR 60.] On August 11, 2006, an ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act. (AR 8-17.) The Appeals Council denied review on September 19, 2007. (AR 4-6.)

Plaintiff makes four challenges to the ALJ's determination. Plaintiff alleges that the ALJ erred (1) in considering the opinion of Plaintiff's treating psychiatrist; (2) in considering the type, dosage, and side effects of Plaintiff's medication; (3) by not posing a complete hypothetical question to the vocational expert; and (4) by not clarifying the requirements of the Dictionary of Occupational Titles (DOT) 376.667-010.

Each of plaintiff's contentions will be addressed in turn.

///

///

2

**ISSUE NO. 1:**

Plaintiff asserts that the ALJ improperly considered the opinions of her treating psychiatrist, Dr. Gurjit Dhaliwal. According to Plaintiff, the ALJ did not properly consider the treating psychiatrist's opinion, and failed to remark upon any of the additional sixty-three pages of Exhibit B3F. (AR 146-214.) Defendant responds that none of those records contain any medical opinion assessing Plaintiff's work related functions, and therefore are not probative. Defendant asserts that the questionnaire was in large part mere reiteration of Plaintiff's subjective complaints and therefore not significant. Finally, Defendant contends that even if assuming the omission of Dr. Dhaliwal's opinions was error, then it was a harmless error.

A treating physician's opinion is entitled to greater weight than that of an examining physician because of a better opportunity to observe the claimant as an individual. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)); 20 C.F.R. § 416.927(d)(1). See also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). However, a treating physician's medical opinion is not necessarily accorded more weight, and may be rejected if it is conclusory or unsupported by medical evidence. Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1195 (9th Cir. 2004). (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings). "Medical opinion" for purposes of Social Security Disability evaluation is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 CFR §§ 404.1527,

416.927 (2008). In <u>Crane v. Shalala</u>, 76 F.3d 251, 253 (9th Cir. 1996), the 9th Circuit held that the ALJ properly rejected a doctor's opinion because it was contained in check-off reports that did not contain any explanation of the bases for the conclusion. Finally, the ALJ is not required to discuss evidence that is neither significant nor probative. <u>Howard v. Barnhart</u>, 341 F. 3d 1006, 1012 (9th Cir. 2003).

Here, Dr. Dhaliwal did give a diagnosis of Major Depressive Disorder, recurrent severe psychotic features, ruled out bipolar II disorder, and depression. However, he did not explain the functional limitations and abilities according to the CFR requirement. (AR 151). Dr. Dhaliwal did not state what the plaintiff still could and could not do despite those diagnoses. The rest of the questionnaire was largely a reiteration of the plaintiff's subjective statements, and the few responses that were not in that category did not explain the functional limitations. For example, some responses described how Plaintiff "appears". Dr. Dhaliwal noted, "CL appears casually dressed, cooperative, calm, clear speech, moody and relevant thought process. CL walk[s] sluggish with slouched shoulders." "CL presents calm, guarded but cooperative, somber, fighting back tears at times, affect mostly restricted." (AR 147-48.) Other responses described her personal history. "CL was placed on a 5150-72° hold March of 2002," and "single, never married, 18 years of school…" (AR 147-148.) Still other responses were merely quotes of Plaintiff's subjective complaints: "'I'm angry real quick'; 'my mom is my best friend otherwise I want to be left alone'; 'I can't take the pressure I have to leave or I might loose control'; CL reports many difficult nights trying to sleep." (AR 149-150.)

The rest of the evidence in Exhibit B3F contains no medical opinion that specifically assessed Plaintiff's ability or inability to perform work-related

functions. (AR 147-214.) Plaintiff does not point to anything in the medical record that opines what she can still do despite her impairments. None of the notes from the Tri City Mental Health Center state why Plaintiff cannot do sustained work. (AR 147-214.)

On the other hand, the ALJ properly took into account the medical opinion of the consultative doctor, Dr. Chang, and to a lesser degree the medical opinion of the consultant from the State Agency. (AR 14-16). They each gave a functional assessment that described what the Plaintiff is able to do and not do despite her impairments. Their examinations and review of the records resulted in medical opinions that were properly considered by the ALJ. Unlike Dr. Dhaliwal, their medical opinion met the CFR requirement because they included what the plaintiff could still do and not do despite her physical and mental restrictions.

Finally, if the ALJ did arguendo err in not commenting on Dr. Dhaliwal's diagnosis, there is nothing that Dr. Dhaliwal said that would have resulted in a greater level of impairment than what the ALJ found, because there is no medical opinion on what she can or cannot do, despite depression, diabetes, Grave's disease, high blood pressure, an obsessive-compulsive disorder, and rheumatoid arthritis. (AR 13.) Since Dr. Dhaliwal had nothing significant to add, not commenting on the diagnosis by the ALJ is harmless error. (Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (harmless error rule applies in Social Security cases).)

**ISSUE NO. 2:**

Plaintiff claims that the ALJ did not discuss the significant side effect of drowsiness that Plaintiff experiences when she takes Lexapro. Plaintiff supports the assertion that Lexapro has a side effect of drowsiness because in a disability

report she noted that Lexapro has a side effect of "sleepy." (AR 109). Plaintiff asserts that the side effect is further supported from the *Complete Guide to Prescription & Nonprescription Drugs*, H. Winter Griffith, M.D., 205, rev. Stephen Moore, M.D., Berkeley House (Perigree), which lists drowsiness as an infrequent side effect to <u>Abilify</u> and a common side effect to <u>Lexapro</u>. Finally, plaintiff contends that the ALJ did not discuss any potential side effects plaintiff may experience from Lexapro.

The defendant contends that the ALJ properly considered Plaintiff's medications and their side effects by noting that her treatment records, with one exception, show the absence of any side effects (AR 15). Plaintiff also admitted in a psychiatric report that her medications were helping. When plaintiff was asked about any side effect from Abilify her response was, "I don't know." Finally defendant claims that the *Complete Guide to Prescription and Nonprescription Drugs* has no relevance to the record of the Plaintiff and therefore should not be entertained.

To determine whether Plaintiff's testimony regarding the severity of her symptoms is credible, the ALJ may consider, among other things, the following factors: (1) a claimant's reputation for truthfulness; (2) inconsistencies either in her testimony or between her testimony and her conduct; (3) the claimant's daily activities; (4) her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002).

Side effects of medications can have a significant impact on an individual's ability to work and should figure in the disability determination process. <u>Varney v. Secretary of HHA</u>, 846 F.2d 581 (9th Cir. 1988). However, there is nothing in the record indicating that Plaintiff's side effects from her medications cause an

inability to work. In fact, the ALJ noted that the plaintiff claimed the psychiatric medications were very helpful, and the records from her treating sources reflect an absence of any side effects. (AR 15.) Plaintiff's impairments cannot be found credible due to inconsistencies in the record as a whole. The ALJ noted that Plaintiff's symptoms cannot be disabling because she was still able to take part in activities such as doing household chores, cooking, walking her dog, using public transportation, cleaning her bikes, listening to music, reading, dancing, and going to the movies. (AR 15.)

In addition, Plaintiff wrote in her <u>Disability Report – Appeal</u>, dated 8/24/04, that Lexapro causes a side effect of "sleepy" (AR 109) which contradicts what Plaintiff said in a psychiatric evaluation months earlier, when she claimed that "she sleeps better now that she is taking medications" (AR 215).

Finally, Plaintiff notes that the ALJ did not specifically ask about the side effects of Lexapro, and did not continue to question her about other medications she was taking. The ALJ only asked about the side effects of <u>Abilify</u>, and her response was "I don't know". (AR 457.) However, the record indicates that Plaintiff was taking both Abilify and Lexapro at the time of the hearing, and it would be difficult for her to distinguish between the side effects of Lexapro and Abilify, as they were both taken for her depression. Therefore, not asking Plaintiff about any possible specific side effects arising from Lexapro was harmless error.

**<u>ISSUE NO. 3:</u>**

Plaintiff claims that the ALJ did not pose a complete question to the vocational expert. She contends that the hypothetical question did not include the symptoms noted by the treating psychiatrist, or questions involving the side effects of sleepiness and drowsiness. (AR 468-70.) Defendant asserts that because there

1  was no error in the first two issues, there was therefore no error in the hypothetical

2  question posed.

3       Here, because the ALJ did not err with regard to plaintiff's treating

4  psychiatrist's opinion or with Plaintiff's alleged side effects of sleepiness, the ALJ

5  was not required to include additional restrictions in the hypothetical.

6

7  **ISSUE NO. 4:**

8       Plaintiff claims that the ALJ did not properly clarify the requirements of

9  DOT 376.667-010 by not asking her for further clarification of her prior floor

10  walker/bouncer occupation. Specifically, Plaintiff asserts that the position implies

11  escorting dancers which in turn implies using force to deflect unwanted advances,

12  and that mopping up "the mess," requires upper body strength. Plaintiff claims the

13  ALJ did not make findings to support his conclusion.

14       Defendant asserts that the ALJ's analysis was proper because the ALJ

15  compared the physical demands of the job to Plaintiff's residual functional

16  capacity, and that there was substantial evidence that supported the ALJ's finding,

17  including a written statement and the hearing testimony which described her duties

18  as a floor walker/bouncer.

19       At step four, the claimant carries the burden of proving that she could not

20  return to her "former type of work," as that work is generally performed. Villa v.

21  Heckler, 797 F.2d 794, 798 (9th Cir. 1986). To determine this, the ALJ makes a

22  determination as to the claimant's residual functional capacity ("RFC"), which is

23  not a medical opinion but an "administrative finding" reached after consideration

24  of all the relevant evidence.  The RFC determines what the claimant can still do in

25  a work setting despite the existing limitations on a regular and continuing basis.

26  Once the RFC is determined, the ALJ compares these limitations with the job

27

28                                                      8

1  duties of the claimant's previous work, which includes work within the last 15
2  years prior to the date of disability, and work as the claimant performed it or as it is
3  generally performed. 20 CFR 404.1520(f) and 416.920(f). The sources of
4  information to determine the job duties are from the claimant and the Dictionary of
5  Occupational Titles (DOT). The VE then testifies as to what previous jobs, if any,
6  is the plaintiff able to do considering the Plaintiff's RFC and the previous jobs that
7  Plaintiff has held. If the Plaintiff is able to do her past relevant work, the Plaintiff
8  is not disabled.

9         Here, the ALJ found the Plaintiff's RFC to include light work, limitations to
10  simple repetitive tasks, and limited to brief contact with co-workers, supervisors,
11  and the public. (AR 13.) Light work requires lifting up to 20 pounds, with 10
12  pounds frequently, and walking and/or standing for up to six hours a day. 20 CFR
13  §§ 202.1567 and 416.967. The ALJ then asked hypotheticals to a vocational expert
14  to determine if the Plaintiff was still able to do her past work despite her
15  limitations (AR 468-70.) The ALJ based the hypothetical  on all of the evidence,
16  which included a written statement from the plaintiff (AR 86) and questions asked
17  during the hearing (AR 460). A vocational expert testified that the Plaintiff would
18  have the RFC to return to her floor bouncer/walker job despite her limitations. (AR
19  469.) The vocational expert based the opinion on DOT 376.667-010 and the
20  limitations posed in the hypotheticals. Nothing in the record indicates that the
21  Plaintiff had to use her upper body strength to ward off advances upon the dancers,
22  nor is it even implicit that escorting dancers would necessarily entail physically
23  deflecting unwanted advances. The ALJ did not err.

24
25
26
27
28                                                    9

1

## CONCLUSION

2    For the foregoing reasons, the decision of the Commissioner is affirmed and

3  Plaintiff's Complaint is dismissed.

4

5  **DATED**: September  25, 2008

6                                          _____
                                                        /s/
7                                          STEPHEN J. HILLMAN
                                           UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                         10